# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT MCFARLANE                    :

           **Plaintiff**              :

           **v.**                         :

JOSEPH HOLLY, *et al.*,            :

           **Defendants**           :

**CIVIL ACTION NO. 3:23-1185**

**(JUDGE MANNION)**

## MEMORANDUM

On August 21, 2021, Plaintiff Robert McFarlane was brutally assaulted by another inmate while he was incarcerated at the State Correctional Institution at Mahanoy, in West Mahanoy Township, Schuylkill County, Pennsylvania (SCI-Mahanoy), leading to severe injuries, including nerve damage and multiple facial fractures. Plaintiff brings this *pro se* Section 1983 action, (Doc. 1), asserting First, Eighth and Fourteenth Amendment claims against a multitude of prison officials and inmates, alleging that the prison officials were warned of the threats against him and failed to protect him, and that the prison officials subsequently stole his property and legal documents while he was being transported to another correctional facility. Presently pending before this Court is Defendants', Major Michael Dunkle, Security Lieutenant Phillip Woods, Security Lieutenant Jodi Cobain, Unit Manager Joseph Holly, Unit Manager Traci Jacobson, Superintendent Michael Gourley, Corrections Superintendent's Assistant Tonya Heist, and Unit

Manager Eric Stracco ("DOC Defendants") motion to dismiss Plaintiff's First and Fourteenth Amendment claims for failure to state a claim upon which relief may be granted. (Doc. 19).[1] Also pending before the Court is Plaintiff's motion to compel discovery. (Doc. 21). For the reasons discussed below, the Court will **GRANT** DOC Defendants' motion to dismiss and **DENY** Plaintiff's motion to compel discovery.

## I.   BACKGROUND

At all times relevant to the Complaint, Plaintiff was an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), assigned to various correctional institutions. (Doc. 1, p. 3). The events that give rise to this action begins at SCI-Mahanoy, when Plaintiff's cellmate, Michael Pennypacker – the nephew of Joseph Koran, the leader of the 215 prison gang – and other 215 gang members accused Plaintiff of being a "rat" and threatened to stab him and have his "throat slit at night while [he] was sleeping." (*Id.*, pp. 7-8). Plaintiff alleges that in the months of October and November of 2020, he informed Defendants Holly, Dunkle, Cobain, Woods and Jacobson of these threats and asked for help. (*Id.*, pp. 8-9). Such

---

[1] DOC Defendants do not challenge Plaintiff's Eight Amendment failure-to-protect claims at this stage of the proceedings. (Doc. 20, p. 2).

entreaties went ignored. (*Id.*). Consequently, Plaintiff wrote a letter to the Pennsylvania State Police asking for help on March 21, 2021. (*Id.*).

Around this time, Defendant inmate Jeff Lafferty involved himself in the situation and started threatening 215 gang members on behalf of Plaintiff against Plaintiff's wishes. (*Id.*, p. 8). Finding himself "caught up between the Latin Kings [prison gang] and the 215," Plaintiff told his unit manager about the trouble Lafferty was causing. As a result, Plaintiff was moved to a different block on April 23, 2021. (*Id.*). The new block (J-Block) "was a worst block" and so Plaintiff reached out to Defendants Jacobson and Holly again about the threats to his life. (*Id.*, pp. 8-9). Plaintiff gets moved again to a different block (B-Block) and feels safe for a short period of time, until Lafferty gets moved over on the same block as Plaintiff on the orders of Defendant Holly. (*Id.*, p. 9).

Plaintiff complains again of the threats he is facing by members of 215 and solicits the help of his mother to call prison officials on his behalf. Despite the requests for a transfer, Plaintiff remains in B-Block where he shares yard time with Pennypacker, Koran, and Lafferty. (*Id.*). Around that time, Lafferty recruits another inmate, Defendant David Reppert, to assault Plaintiff. (*Id.*). Then, on August 21, 2021, an unsuspecting Plaintiff is struck in the head with a bag of bocce balls by Reppert. (*Id.*). As a result, Plaintiff suffered severe

- 3 -

injuries, including nerve damage and multiple facial fractures, and was rushed to the hospital.

At first, Plaintiff was not aware of who the assailant was. Plaintiff alleges that prison staff refused to provide him with the name of his attacker or give him the information he needed to file prison grievances. (*Id.*). When Plaintiff was moved out of the infirmary, he was held in administrative custody in the Restricted Housing Unit (RHU) for three months, pending a transfer to a different institution. He was then transferred to SCI-Camp Hill, and ultimately to SCI-Phoenix. (*Id.*, p. 10). Plaintiff alleges that during these transfers, prison staff stole his legal work and other property. (*Id.*).

Plaintiff initiated this action by filing a Complaint on July 12, 2023. (Doc. 1). He brings failure-to-protect claims under the Eighth Amendment related to the assault, and Fourteenth Amendment due process claims and First Amendment denial of access of courts related to the alleged theft of his property. (*See id.*, pp. 6-7). Plaintiff does not specify what particular claims he brings against each individual Defendant. He seeks monetary damages from all Defendants, an order compelling security to charge inmates Lafferty and Koran for their role in the assault, and a single cell housing assignment on the safest block in the prison. (*Id.*, p. 11).

- 4 -

DOC Defendants filed a motion to dismiss on October 9, 2023. (Doc. 19). Plaintiff filed an objection to the motion to dismiss and a motion to compel Discovery on November 1, 2023. (Doc. 21). With briefs filed (Docs. 20, 22, 23, and 24), the motions are now ripe for review.

## II.   **LEGAL STANDARD**

### A. Motion to Dismiss

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under

Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a ... plaintiff

can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* complaints

- 7 -

must still adhere to the Federal Rules of Civil Procedure and contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The Court need not accept "unsupported conclusions and unwarranted inferences," nor "legal conclusion[s] couched as ... factual allegation[s]." *Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

### B. Motion to Compel Discovery

Federal Rule of Civil Procedure 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. Under Rule 37(a), a party may file a motion to compel discovery when the opposing party fails to respond or provides incomplete or evasive answers to properly propounded document request or interrogatories. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii—iv). Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This scope formally included matters that were "reasonably calculated" to lead to the discovery of relevant evidence, but Rule 26 as amended, no longer includes this language. A matter is relevant if "it has any tendency to make a fact more or less probable

than it would be without the evidence; and, the fact is of consequence in determining the action." Fed. R. Evid. 401.

The scope and conduct of discovery are within the sound discretion of the trial court. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003); *see also McConnell v. Canadian Pacific Realty Co.*, 280 F.R.D. 188, 192 (M.D. Pa. 2011) ("Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment.").

## III.  DISCUSSION

### A. Fourteenth Amendment Due Process Claims

Plaintiff brings forth claims under the Fourteenth Amendment, alleging that Defendants violated his due process rights "when they stole all [his] property, and legal work..." (Doc. 1, p. 5). DOC Defendants contend that the Fourteenth Amendment claims against them fail as matter of law since Plaintiff had access to an adequate post-deprivation remedy through the prison grievance process. The Court agrees.

It has been established that when a citizen has been deprived of property, by persons acting under color of state law, the focus of the court's

- 9 -

inquiry then must be on whether the plaintiffs have suffered deprivations without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).

In *Parratt*, the Supreme Court of the United States made the distinction between cases where the injured party was deprived of his property interest without a pre-deprivation hearing when the deprivation was authorized by an established state procedure, from those cases where it was the "result of a random and unauthorized act by a state employee." *Id.* at 541. The Supreme Court found that where it was the result of an authorized state procedure, due process required pre-deprivation notice and a hearing in order to serve as a check on the possibility that a wrongful deprivation would occur. *Id.* at 538. It further held that when the deprivation is the result of a random and unauthorized act by some state employee, where the state cannot predict when such might occur and is, therefore, unable to provide a hearing prior to it taking place, procedural due process is satisfied if there is "available some meaningful means by which to assess the propriety of the State's action at some time after the initial taking." *Id.* at 539.

The holding in *Parratt* was expanded by the Supreme Court, three years later, in *Hudson v. Palmer*, 468 U.S. 517 (1984). In *Hudson*, the Supreme Court held that meaningful post-deprivation hearings satisfy procedural due process, even when the unauthorized acts of state

- 10 -

employees are intentional. *Id.* at 533. Following the "underlying rationale" of *Parratt*, the *Hudson* Court stated,

> that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording predeprivation process is concerned. The state can no more anticipate and control in advance the random and unauthorized conduct of its employees than it can anticipate similar negligent conduct.

*Id.* The Supreme Court qualified that holding, as did the Supreme Court in *Parratt*, by adding "intentional deprivations do not violate the [Due Process] Clause provided, of course, that adequate state post-deprivation remedies are available." *Id.* Thus, in order to succeed on a due process claim, an inmate must not only show that his property was confiscated but that he was not afforded a post-deprivation administrative remedy. *Ball v. Campbell*, 2011 WL 7080692, at *7 (M.D. Pa. Dec. 9, 2011), *R & R adopted as the Opinion of the Court* in 2012 WL 201846 (M.D. Pa. Jan. 23, 2012). The United States Court of Appeals for the Third Circuit has found that adequate post-deprivation remedies include the ability to file a state tort

- 11 -

action or use of the prison's grievance process. *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010); *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000). The existence of either of these post-deprivation remedies therefore "forecloses any due process claim ... even if [the] inmate is dissatisfied with the result of the process." *Iseley v. Horn*, 1996 WL 510090, at * 6 (E.D. Pa. Sept.3, 1996), citing *Austin v. Lehman*, 893 F.Supp. 448, 454 (E.D. Pa.1995).

Here, Plaintiff avers that he filed grievances against the DOC Defendants related to the alleged theft of his property at both SCI-Mahanoy and SCI-Phoenix. (Doc. 1, pp. 10, 13, and 16). While Plaintiff may not be satisfied with the responses he received for such grievances, the availability of the grievance process to him constitutes an adequate post-deprivation remedy and effectively "forecloses any due process claim." *Horn*, 1996 WL 510090, at * 6. Accordingly, Plaintiff's Fourteenth Amendment due process claims will be dismissed with prejudice.

### B. First Amendment Access-to-Court Claim

Plaintiff brings forth a claim under the First Amendment, alleging that DOC Defendants barred his access to courts. DOC Defendants argue that such a claim should be dismissed because Plaintiff has failed to plead his

underlying claim in accordance with Fed. R. Civ. P. 8(a) and to describe it well enough to show it is based on "more than hope," and to the extent Plaintiff's access-to-court claims refers to claims he brings in the instant lawsuit, it should be dismissed as moot. The Court agrees.

The law surrounding an access-to-the-courts claim has been aptly set forth as follows:

> "The right of access to the courts is sourced from both 'the First and Fourteenth Amendments,' and is typically framed as a due process right in the inmate context, but in other contexts as 'an aspect of the First Amendment right to petition the Government for redress of grievances[.]'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 n.17 (3d Cir. 2018) (citations omitted). "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). There are two general categories of actionable federal claims based upon an alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).
>
> The first category is forward-looking claims. *Id.* The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.* The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff

- 13 -

in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category is backward-looking claims. *Id.* at 413–14. Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.* "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15. The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must establish an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.*

> In the prison setting, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Rather, in the prison setting, actual injury is the loss of, or inability to pursue, a nonfrivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Id.* at 354–55. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (italics in [original]).

*Wyatt v. Wilson*, 2025 WL 539687, at *12 (M.D. Pa. Feb. 18, 2025) (quoting *Talley v. Wetzel*, No. 22-cv-1712, 2023 WL 5163289 at *8-9 (M.D. Pa. July 17, 2023)).

Here, the Court finds that Plaintiff's complaint does not allege an actual injury—i.e., that he lost a chance to pursue or is currently being hindered from pursuing a nonfrivolous, arguable underlying claim. The Court further finds, as DOC Defendants correctly argue, that Plaintiff's complaint does not describe the nature of the nonfrivilous, arguable underlying claim well enough to show that it is "more than hope[.]" *See Christopher*, 536 U.S. at 415 (footnote omitted). In other words, Plaintiff's Complaint does not plead his access-to-courts claim in a manner that satisfies Rule 8(a) of the Federal Rules of Civil Procedure. Thus, although Plaintiff's complaint sets forth numerous allegations to show that his legal paperwork was stolen from him

while he was being transferred to another correctional facility, his complaint neither explains how he was injured by this denial nor alleges the potential meritoriousness of his underlying claim, which he allegedly lost a chance to pursue or is currently being prevented from pursuing. Furthermore, if the underlying lost or rejected legal claims are the separate Eighth and Fourteenth Amendments claims brought in this lawsuit, then Plaintiff's access-to-courts First Amendment claim is moot given that they are presently before the Court. Accordingly, Plaintiff's First Amendment claim will be dismissed with prejudice.

### C. Claims Against Defendants Gourley, Stracco and Heist

DOC Defendants note that the Complaint states that Defendants Gourley, Stracco and Heist were all employed by SCI-Camp Hill and that none of them were made aware of Plaintiff's issues with the 215 gang prior to the August 2021 assault. (Doc. 1, pp. 5-6). Accordingly, the Court agrees with DOC Defendants, that any claims related to events prior thereto are inapplicable to those Defendants (particularly, Plaintiff's Eighth Amendment failure-to-protect claims).

In the Complaint, Plaintiff asserts that Defendant Stracco moved Plaintiff to a cell that was "one cell away from Joseph Koran's Co-defendant

Robert Monacelli both 215 gang members" "in retaliation for filing grievances, and a pending Civil Complaint[.]" (Doc. 1, p. 10). Despite the temporary proximity to Monacelli, Monacelli never knew of Plaintiff's past encounters with the 215 gang nor did Monacelli ever threaten or attack Plaintiff. Plaintiff was later moved to SCI-Phoenix.

To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context...." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a

- 17 -

prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822. Here, Plaintiff fails to state a First Amendment retaliation claim.

First, Plaintiff's movement to another cell is not inconsistent with the legitimate penological objectives of the corrections system at SCI-Camp Hill. By Plaintiff's own admission, "DOC continued to move [him] around and transfer [him]…" to different cells and blocks. (Doc. 1, p. 10). He summarily asserts that each of those moves placed in "harm[']s way" but fails to demonstrate how Plaintiff's grievance filing was the motivating factor in the prison officials' decision to move him. (*Id.*). At best, Plaintiff states that Defendant Stracco spoke with Plaintiff's "former unit manager Joseph Holly concerning [Plaintiff's] pardon"[2] and, vaguely, "[i]n retaliation for filing grievances, and a pending [c]ivil [c]omplaint [Stracco] moves [Plaintiff] to K-Block 23 cell one cell away from Joseph Koran's Co-defendant Robert Monacelli both 215 gang members." (*Id.*). "To establish the causation element of a retaliation claim, a plaintiff must prove that the exercise of his First Amendment rights played some substantial role in motivating the adverse action." *Conklin v. Warrington Twp.*, 2007 WL 4248214, at *3

---

[2] The Court is unable to discern what plaintiff means by "pardon."

(M.D.Pa.2007) (internal quotation marks omitted) *aff'd sub nom. Conklin v. Warrington Twp.*, 304 F. App'x 115 (3d Cir.2008). To make this showing, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007). Here, Plaintiff has done neither. He fails to plead any of the particulars of how and when Stracco came to know of his grievance filings, or even how that played any factor in Plaintiff's transfer to K-Block. The conclusory allegations Plaintiff lodges are insufficient to state a claim.

Second, Plaintiff admits that his temporary cell neighbor, Monacelli, did not know of Plaintiff's identity, was unfamiliar with Plaintiff's past encounters with the 215 gang, and never threatened or attacked Plaintiff before he was later moved again to SCI-Phoenix. Neither did Plaintiff demonstrate that Stracco knew of Monacelli's gang affiliation. Plaintiff makes the abstract allegation that the cell transfer placed him in a "potential risk of serious danger." (Doc. 1, p. 10). This is nothing more than Plaintiff's naked speculation and this Court is not required to assume that the Plaintiff can use the discovery process to prove facts not alleged. *Evancho v. Fisher*, 423 F.2d 347, 353-354 (3d Cir. 2005). Accordingly, Plaintiff suffered no harm nor an

"adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and the claim against Defendant Stracco will be dismissed.

As to Defendants Gourley and Heist, Plaintiff alleges the following:

"I properly file a grievance in response to both complaint's and both Facility Manager M. Gourley, and Facilities Manager assistant T. Heist both cover up the crimes they [c]omitted against me. Violating my protected Constitutional Rights, [m]y due process of law, and a [b]latant [d]enial to access the Court....

So they now decided to transfer me again on February 24th 2023 in which they [s]tole my legal work and the rest of my property with the consent of Superintendent M. Gourley, and T. Heist. Now also defendants in my civil action lawsuit."

(Doc. 1, p. 10). As explained above, the theft of property – Fourteenth Amendment due process – claim will be dismissed. Thus, Plaintiff's remaining allegations against Defendants Gourley and Heist appear to either relate to their responses to certain grievances he filed or their role as supervisors.

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct, and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho*, 423

- 20 -

F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). In other words, a defendant "must have personal involvement in the alleged wrongs ... shown through allegations of personal direction or of actual knowledge and acquiescence[.]" *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (quoting *Rode*, 845 F.2d at 1207).

Allegations of personal involvement must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time, place, and personal responsibility. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct. *See Rode*, 845 F.2d at 1207-08 (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (Grievance Coordinator and Superintendent's involvement in review and denial of grievance insufficient to establish personal involvement). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, No. 1:04-CV-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho*, 423 F.3d at 353). Allegations that broadly implicate multiple defendants without delineating individual conduct are

- 21 -

legally insufficient. *See Van Tassel v. Piccione*, 608 F. App'x 66, 69-70 (3d Cir. 2015).

Here, to the extent the allegations against Defendants Heist and Gourley relate to their responses to his grievances, such allegations are insufficient to establish these Defendants' personal involvement in the challenged conduct under §1983. *See Watkins v. Horn*, 1997 WL 566080 at *4 (E.D. Pa. 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement); *Mitchell v. Keane*, 974 F.Supp. 332, 343 (S.D.N.Y. 1997) ("it appears from the submissions before the court that [Plaintiff] filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. [Plaintiff]'s dissatisfaction with this response does not constitute a cause of action."); *Caldwell v. Beard*, 2008 WL 2887810, at *4 (W.D. Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), *aff'd*, 2009 WL 1111545 (3d Cir. April 27, 2009); *Orrs v. Comings*, 1993 WL 418361, at *2 (E.D. Pa. Oct. 13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."). "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." *Little v. Mottern*, 2017 WL 934464, at *11 (M.D. Pa. Mar. 7, 2017)

(quoting *Rauso v. Vaughn*, 2000 WL 873285, at *16 (E.D. Pa., June 26, 2000). Furthermore, to the extent the allegations against Defendants Heist and Gourley solely relate to their roles as supervisors, such allegations equally do not establish claims brought under §1983. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (federal civil rights claims brought under §1983 cannot be premised on a traditional theory of *respondeat superior*); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Indeed, §1983 supervisory liability is available when: (1) the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations"; or (2) policymakers are shown to have acted with deliberate indifference when "establish[ing] and maintain[ing] a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). A defendant shows deliberate indifference if they "acted or failed to act despite having knowledge that her actions or inaction … would subject the inmate to a substantial risk of serious harm." *Chavarriaga*, 806 F.3d at 227 (citing *Farmer v. Brennan*, 511 U.S. 825, 840 (1994)). Here, Plaintiff does not specify any policies, customs, or practices Defendants Heist and Gourley maintained. Neither does Plaintiff show that these

Defendants participated in violating his constitutional rights, directed others to violate them, or, as the people in charge, had knowledge of and acquiesced to their subordinates' violation and had "some affirmative conduct ... play[ ] a role in the discrimination." *Andrews*, 895 F.2d at 1478. Accordingly, the claims against Defendants Gourley and Heist will be dismissed.

### D. Official Capacity Claims

In his form Complaint, Plaintiff has marked that he brings claims against the DOC Defendants in both their individual and official capacities. (Doc. 1, pp. 3-6). DOC Defendants contend that official capacity claims for money damages are foreclosed and should be dismissed with prejudiced. The Court agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. CONST. amend. XI. Eleventh Amendment protections also extend to state agencies and officials of those agencies in their official capacities. *See Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009); *Melo v. Hafer*, 912

F.2d 628, 635 (3d Cir. 1990). Thus, because DOC is a state agency, DOC and its employees, to the extent that they are sued in their official capacity, enjoy Eleventh Amendment protections. *See Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

This immunity is not absolute. Three exceptions to sovereign immunity exist: (1) abrogation by an act of Congress; (2) waiver by state consent to suit; (3) suits against individual state officials for prospective relief to remedy an ongoing violation. *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 344–45 (3d Cir. 2003) (citing *MCI Telecomm Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)).

After review, Plaintiff's Section 1983 claims do not fit within these exceptions. Congress has not abrogated states' sovereign immunity by enacting Section 1983 and neither states nor employees acting in their official capacities are recognized as "persons" under that statute. *See Will* 491 U.S. at 66, 71. Pennsylvania has also expressly invoked its sovereign immunity under the Eleventh Amendment by statute. 42 Pa. Cons. Stat. §8521(b). Additionally, Plaintiff's Complaint cannot be construed to seek prospective relief to remedy ongoing violations by the individual defendants since plaintiff seeks money damages for past alleged wrongs. As such, the

- 25 -

Court finds that DOC Defendants are entitled to sovereign immunity protection under the Eleventh Amendment and all claims against them to the extent they are sued in their official capacities will be dismissed.

### E. Motion to Compel Discovery

In his motion to compel discovery, Plaintiff avers that on August 25, 2023, he "served Chief Counsel Timothy Holmes, Plaintiff's First Request for Production of Documents, [w]hich was mailed via U.P.S. first class mail on 8-28-2023." (Doc. 21, ¶3). Yet, DOC Defendants counter that Mr. Holmes is not a party to this case and does not represent any defendant in this action. (Doc. 23, p. 2). Furthermore, DOC Defendants note that Plaintiff did not allege that he served any DOC Defendant or their undersigned counsel with the request for production of documents at issue in his motion, or with any other request for discovery. (*Id.*; *see also* Docs. 21-22). The Court is constrained to agree.

Pursuant to Federal Rule of Civil Procedure 34(a), "[a] party may serve on any other party a request within the scope of Rule 26(b)." "The party to whom the request is directed must respond in writing within 30 days after being served or – if the request was delivered under Rule 26(d)(2) – within 30 days after the parties' first Rule 26(f) conference." Fed. R. Civ. P

- 26 -

34(b)(2)(A). Here, given that Plaintiff has not shown to have properly served the appropriate parties with the request for production of documents, his motion will be denied.

## IV.   **CONCLUSION**

Based on the foregoing, the Court will **GRANT** DOC Defendants' motion to dismiss **(Doc. 19)** and **DENY** Plaintiff's motion to compel discovery **(Doc. 21)**. An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**Date:** 3/11/25
23-1185-01